The Honorable Dennis Young State Representative P.O. Box 1835 Texarkana, AR 75504
Dear Representative Young:
This is in response to your request for an opinion on the following questions:
 1. Could a district make a student pay by either fine or charge (i.e., $2.00 per hour) for time spent in detention or alternative learning centers, in order to fund the district's expenses for these programs?
 2. Also, could a school district require a student who could not pay the fine or charge be assigned to a community service program for which community service time would earn them monetary credit toward their debt (i.e., $2.00 per hour)?
As a general matter, it is my opinion that the answer to these questions is in all likelihood "no" under the current legislative scheme with respect to school district student discipline. See generally A.C.A. §6-18-501 et seq. (Repl. 1993 and Supp. 1995).[1] Legislative amendment or clarification would, in my opinion, be necessary in order to sanction such measures at the school district level. With regard to charging a fee for such programs, constitutional questions may remain in light of the requirement that "the State shall ever maintain a general, suitable and efficient system of free public schools. . . ." Ark. Const. art. 14, §1. Resolution of any constitutional question would, in any event, require reference to the particular legislation developed in this regard.
It must be initially noted in addressing these questions that the General Assembly has stated, in the context of legislation pertaining to procedures governing the use of corporal punishment, that "student discipline is essential to the creation of an optimum learning environment; and that the only place that many individuals are likely to learn self-control and good behavior is in the public schools. . . ." Acts 1994 (2nd Ex. Sess.), No. 51, § 9 (emergency clause). I am reluctant to conclude, in light of this statement, that the general authority and responsibility of school districts to develop student discipline policies (see A.C.A. §§ 6-18-502 and -503) includes the authority to extract payment from students for time spent in detention in order to fund the districts' expenses in this regard.[2] If discipline is deemed a necessary or essential element of the educational process, can it reasonably be contended that the legislature intended for school districts to be authorized to impose a charge or fee for programs that are developed in the interest of discipline? Would such a fee be constitutional, in any event, if the discipline program is a necessary part of the "general, suitable and efficient system of free public schools . . .[?]" I believe this latter question would be the focus of the inquiry in the event of a constitutional challenge.[3]
It is my opinion, with the foregoing in mind, that a school district in all likelihood lacks authority under current law to require payment, whether identified as a "fine" or a "charge," for time spent in detention in order to fund the district's expenses for the program. If the fine is clearly prescribed, instead, as a penalty under the district's student discipline policy (see generally A.C.A. §§ 6-18-502 and -503), such a measure may withstand scrutiny. Any policy in this regard would, of course, have to be developed in accordance with Department of Education guidelines, which in turn must include parent, student and district personnel involvement. Id. Requiring community service would probably be enforceable as an alternative penalty for those students unable to pay the fine, assuming that this was properly devised as part of the discipline policy.
With regard to fines or charges for time spent in alternative learning centers, additional reference must be made to A.C.A. §§ 6-18-503, -508 and -509 (Supp. 1995). It is stated in subsection (a)(1)(B)(i) of § 6-18-503
that each school district's discipline policy shall include provisions for "an alternative learning environment provided by the district[.]" (emphasis added). See also A.C.A. § 6-18-508(a) ("Every school districtshall establish an alternative learning environment which shall afford students an environment conductive to learning.") (emphasis added). The language emphasized above further buttresses the conclusion that school districts have not been authorized to charge fees for student attendance in such alternative classes or schools. Legislative clarification would, at the very least, be necessary in order to counter this existing expression of legislative intent. And constitutional questions may remain, as noted above, depending upon the exact substance of any legislative authorization of charges for such programs.
As for requiring payment of a fine, it is my opinion that A.C.A. § 6-18-509 may be cited in opposition wherein it states:
 A student assigned to an alternative class or school for behavioral reasons must receive intervention services designed to address the student's behavior problems. Such intervention services shall not be punitive in nature but must be designed for long-term improvement of the student's ability to control his or her behavior.
A.C.A. § 6-18-509(c) (Supp. 1995) (emphasis added).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
[1] An exception may exist, as noted below, in the case of a fine for time spent in detention, assuming this was in fact imposed as a penalty and developed as a disciplinary policy. See generally, A.C.A. §§ 6-18-502
through -504.
[2] See also A.C.A. § 6-18-506 (Repl. 1993), requiring written policies concerning disorderly conduct. Section 6-18-506 is the codification of Act 74 of 1979, §§ 1-3. The emergency clause in Act 74 (§ 6 thereof) stated that "[i]t is hereby found and determined by the General Assembly that the lack of proper discipline in our public schools is hampering many students in their academic endeavors. . . ." Section 4 of the act provided that all school districts failing to file the disciplinary policy by November 1, 1979, would have all state funds withheld until the policy was filed with the Department of Education.
[3] Further review of any constitutional issue is not warranted at this time, given the general nature of your questions. For general reference concerning the validity of public school fees, see 41 A.L.R.3d 752 (1972 and Supp. 1995). As noted therein, tuition fees and fees for particular materials, activities, or privileges have more often than not been held invalid. Id. at 755.